**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

JENNIFER LOU CUSICK,              )
                                  )
              Plaintiff,          )
                                  )
                                  )  Case No. CIV-20-076-RAW-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
              Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Jennifer Lou Cusick (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 46 years old at the time of the ALJ's decision. She has a high school education and past relevant work as a child monitor and forklift operator. Claimant alleges an inability to work beginning on January 1, 2017, due to limitations resulting from chronic back pain, weight loss surgery resulting in stomach issues, ulcer, migraines, depression, anxiety, and nausea.

### Procedural History

On February 1, 2018, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On February 20,

2018, she filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her applications were denied initially and upon reconsideration. On May 13, 2019, ALJ Elisabeth McGee conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On June 18, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on January 21, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform the full range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC determination (with subparts) and (2) improperly applying the Medical-Vocational Guidelines (the "grids").

## RFC Assessment

In her decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar spine, obesity with gastric bypass, gastroenteritis, and pouchitis. (Tr.

4

15-16). She determined Claimant could perform the full range of sedentary work. (Tr. 18). Based upon Claimant's RFC and her age, education, and work experience, the ALJ determined a finding of "not disabled" was directed by Rule 201.21 of the grids. (Tr. 24-25). As a result, the ALJ concluded Claimant was not under a disability from January 1, 2017, through the date of the decision. (Tr. 25).

Claimant first contends that the ALJ did not adequately account for her persistent abdominal pain, nausea, vomiting, and diarrhea in the RFC. She asserts that apart from her need for gallbladder surgery and evidence of an ulcer, which the ALJ regarded as successfully treated, the ALJ did not view Claimant as suffering from any significant gastrointestinal issues. Claimant asserts this is contrary to much of the record evidence and the opinion of her physician, Faisl Khan, M.D., who determined Claimant needed to take four to five breaks as needed during the workday because of her nausea, vomiting, and diarrhea.

Claimant underwent gastric bypass surgery in April of 2015. In July of 2015, she was sick to her stomach with mild nausea and intermittent vomiting. (Tr. 20, 392-94, 399-406). She began having problems with her gallbladder in March of 2016, presenting to the emergency room with right upper quadrant pain, epigastric pain, nausea, and vomiting on March 21, 2016. An ultrasound confirmed she had gallstones and required surgery. (Tr. 20, 408, 410, 518).

5

Even after gallbladder surgery, Claimant continued to have nausea and vomiting. She presented to the emergency room on April 21, 2016, with abdominal pain, flank pain, back pain, chest pain, and vomiting. (Tr. 706-08). Claimant continued to experience problems, and in May of 2016, an EGD was performed, which indicated a large, cratered ulcer present at the gastrojejunal anastomosis. Claimant was discharged with prescriptions for medication. (Tr. 20, 444-48). Claimant presented to the emergency room in August of 2016, complaining of headache, nausea, and vomiting. She was treated for a migraine. (Tr. 762). She returned to the emergency room on June 4, 2017, complaining of left lower quadrant pain, nausea, and vomiting. She denied diarrhea. She was suffering from constipation and gastroenteritis. (Tr. 20, 807-08).

Claimant began receiving treatment from Dr. Khan in June of 2017. She continued to suffer from nausea and vomiting, which kept her in bed, in addition to pain in her upper and lower back, which resulted in her needing to take frequent rest periods during any activity. Dr. Khan prescribed Claimant with medication for gastritis, peptic ulcer disease, nausea and vomiting, and referred her to pain management. (Tr. 21, 853-56). Claimant was involved in a car accident in early September and went to the emergency room on September 9, 2017, complaining of back pain, neck pain, dizziness, headache, nausea, vomiting, and sore knees. (Tr. 21, 770, 773). She followed up with Dr. Khan on September 14, 2017,

reporting that her gastritis was improved but requested a scope of her ulcer. (Tr. 21, 848). On November 5, 2017, Claimant presented to the emergency room with abdominal pain she related to her ulcer with nausea and vomiting aggravated by eating and movement. Claimant was discharged with medication for nausea and vomiting and for pain. (Tr. 21, 815-16). She underwent an EGD on November 9, 2017, which revealed mild gastritis, normal examination of the esophagus, and a jejunal ulcer. She was prescribed medication. (Tr. 21, 784-86).

Claimant again complained to Dr. Khan of abdominal pain, nausea and vomiting, diarrhea, and neck and low back pain in March of 2018. She indicated that her pain was worsening and affected her ability to work, sleep, perform activities, relationships with friends and family, and her concentration. (Tr. 832-33). She continued to feel nauseated in May of 2018, and indicated she was experiencing vomiting and diarrhea. (Tr. 883). At her appointment in June of 2018, Claimant's chief complaint was neck and low back pain, but her stomach also hurt, and she was experiencing nausea and diarrhea. (Tr. 881). On July 9, 2018, Claimant was suffering from lower abdominal pain and had been bed bound for three days because of it. She reported daily nausea, vomiting, and diarrhea. (Tr. 879).

At her July appointment, Dr. Khan completed a physical RFC evaluation of Claimant. Among his findings, he determined Claimant

7

could sit for three hours at one time, stand 30 minutes at one time, and walk for 30 minutes at one time during an eight-hour workday. She did not need an assistive device to stand, walk, or balance, but she needed at least four to five breaks a day because of her nausea, vomiting, and diarrhea. Claimant needed a sit/stand option, but Dr. Khan indicated how often/how long was "undetermined." Claimant could lift and/or carry 0-5 pounds infrequently and could never lift and/or carry anything above five pounds. She did not have any limitations for operating leg or foot controls and her legs did not need to be elevated when she was seated.

Regarding Claimant's upper extremities, she could push/pull occasionally, work in extended position and reach infrequently, and never work above shoulder level or overhead. She could frequently use her hands for grasping/handling and fingering/feeling. Claimant could occasionally climb stairs and ramps, infrequently crawl, kneel, balance, and climb ladders, and never bend, squat, stoop, crouch, or climb scaffolds. Regarding environmental restrictions, Claimant had no restrictions for driving/riding in commercial-type equipment or exposure to high noise levels, mild restrictions for exposure to respiratory irritants, moderate restrictions for limitation on fine visual acuity, marked restrictions for exposure to extremes and sudden or frequent changes in temperature and/or humidity, and was to

completely avoid unprotected heights, machinery with mechanical moving parts, and handling vibrating tools. Dr. Khan indicated his evaluation was based upon his evaluation/assessment of Claimant at each visit, upper and lower extremity motor strength, and range of motion at each visit. He estimated Claimant's impairments had remained at their present level of severity continuously and had been present at least one year prior to the date of his assessment. (Tr. 22-23, 897-900).

Claimant again presented to the emergency room on July 16, 2018, with abdominal pain and was given prescriptions for medication. (Tr. 937-40). She returned to Dr. Khan on August 17, 2018, complaining of constant nausea, vomiting, and extreme abdominal pain. He prescribed her medication and referred her to a gastroenterologist. (Tr. 21, 877-78).

Although the ALJ referenced some of the evidence regarding Claimant's nausea, vomiting, and diarrhea and mentioned Claimant's testimony that she had constant vomiting and diarrhea, the ALJ discounted it, noting that "[t]he medical evidence [of] record reflects that after gastric bypass surgery, the claimant sought emergent care for abdominal and/or gastrointestinal issues associated with nausea and vomiting, for which there was an acute underlying cause, e.g., gallstones for which the claimant had gallbladder surgery, and ulcers that received treatment[.]" The ALJ also noted that Claimant "occasionally denied diarrhea." She

9

also referenced that Claimant was referred to a specialist, but there was nothing in the record to show if she received treatment. (Tr. 22).

The ALJ must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). She may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). As outlined by the evidence herein, the Claimant's abdominal pain, vomiting, nausea, and diarrhea did not resolve after her gallbladder surgery or after taking ulcer medication. The evidence shows that Claimant continued to suffer from these ailments as late as August of 2018.

Moreover, Claimant also contends that the ALJ failed to properly evaluate Dr. Khan's opinion that she needed to take four to five breaks per workday. Because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must "articulate" in her decision "how persuasive

10

[she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [she] will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

11

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). As already mentioned herein, she may not "pick and choose among medical reports, using portions of evidence favorable to her position while ignoring other evidence." *Hardman*, 362 F.3d at 681. If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ summarized Dr. Khan's findings on the physical RFC evaluation, including his determination that Claimant would need four to five breaks during the workday because of nausea/vomiting and diarrhea. (Tr. 22). After summarizing Dr. Khan's physical RFC evaluation, the ALJ found his opinion was not persuasive with the following explanation:

> The undersigned does not find persuasive the severe limitations as made by Dr. Khan as they are inconsistent with and unsupported by the medical evidence record or the doctor's treatment notes. There is not any objective medical evidence to support severe limitations to the claimant's fine visual acuity, temperature extremes, vibration, grasping/handling, fingering/feeling, or to respiratory irritants.

(Tr. 23).

When making her determination of how persuasive she viewed Dr. Khan's opinions, however, the ALJ made no mention of the opinion that Claimant needed to take additional breaks beyond the

usual rest breaks and lunch break. Moreover, she provided no explanation for why it was excluded. Although the ALJ does not have to give any "specific evidentiary weight" to Dr. Khan's opinion and can utilize a "single analysis" approach when considering Dr. Khan's opinions, the ALJ still had to consider all of Dr. Khan's opinions on the physical RFC evaluation. *See Hardman*, 362 F.3d at 681.² Because Dr. Khan determined Claimant needed four to five breaks during the workday, the ALJ should properly address the opinion on remand and determine to what extent it affects Claimant's ability to perform work.

Claimant further asserts that the ALJ failed to properly evaluate her subjective complaints because she ignored significant portions of the evidence, specifically evidence that Claimant continued to suffer from nausea, vomiting, and diarrhea after her gastric bypass and gallbladder surgeries. The ALJ noted that even though Claimant described her daily activities as "fairly limited" because of nausea, vomiting, and diarrhea, the limitations "are not objectively verified by objective diagnostic signs and findings with reported symptoms that would support the alleged loss of functioning in regards to the claimant's activities of daily living." (Tr. 22). This is not an appropriate basis upon

---

² The Court cannot make the determination for the ALJ. *See Haga*, 482 F.3d at 1207 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

13

which to reject testimony of daily activities. *See Edwards v. Berryhill*, 2017 WL 4233283, at *4 (E.D. Okla., Sept. 25, 2017) ("This Court agrees with Claimant that the rejection of the testimony concerning activities of daily living on the basis that they have not been objectively verified to a reasonable degree of certainty misstates the proper evaluative standard.").

In any event, because the evaluation of Claimant's symptoms is tied closely to the RFC determination, after properly considering Dr. Khan's opinion in conjunction with the other evidence of record, the ALJ should reconsider her assessment of Claimant's subjective symptoms on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Step Five Determination

Claimant argues the ALJ improperly applied the grids at step five. Based upon her determination that Claimant could perform a full range of sedentary work, the ALJ applied rule 201.21 of the grids and determined Claimant was not disabled. (Tr. 25). Because the case is remanded for the ALJ to properly evaluate Dr. Khan's opinion, on remand, the ALJ should re-evaluate whether conclusive reliance on the grids is appropriate at step five. The ALJ may need to seek additional testimony from a VE to determine Claimant's

RFC and/or whether Claimant can perform work in the national economy.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE